**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                    No. CR 10-2217 JB

JOSE VELAZCO-BARRAZA,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Request for a Downward Variance, filed Jan. 12, 2012 (Doc. 46)("Sentencing Memo."). The Court held a sentencing hearing on March 8, 2012, and on June 5, 2012. The primary issues are: (i) whether the Court should accept the Plea Agreement filed May 7, 2012 (Doc. 53); and (ii) whether the Court should grant Velazco-Barraza a downward variance to a sentence of 37-months, because of his history of mental health and competency issues. The Court determines that the parties' Plea Agreement does not comply with rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and does not provide a basis for the offense level of 20 to which the parties stipulate, and the Court thus rejects the Plea Agreement. The Court concludes that a variance to a sentence of 37-months is too much in this case, given that Velazco-Barraza's guidelines sentencing range is 70-to 87-months. The Court also concludes, however, that a downward departure is warranted, pursuant to U.S.S.G. §§ 5H1.3 and 5K2.13, for Velazco-Barraza's mental health and diminished capacity. The Court thus sentences Velazco-Barraza to a term of 47-months imprisonment.

<u>**FACTUAL BACKGROUND**</u>

Velazco-Barraza's personal history is lamentable. He has suffered from mental health

issues throughout his adult life.   His mental health issues contributed to his previous criminal convictions, and the conviction for which he is sentenced today.   His crimes have not caused great harm to others, but Velazco-Barraza rather appears to purposefully re-insert himself into the United States criminal justice system as a means of receiving mental health treatment.

      1.      **<u>Velazco-Barraza's Personal Background.</u>**

Velazco-Barraza was born on February 10, 1964, in Juarez, Chihuahua, Mexico.   <u>See</u> Presentence Investigative Report ¶ 33, at 11, disclosed Dec. 20, 2011 ("PSR").   His grandmother raised him in Delcias, Chihuahua, Mexico until the age of seven, at which time he moved in with his mother.   He remained with his mother until the age of nine, when he left his mother's residence, because his mother was physically abusing him.   Velazco-Barraza entered the United States for the first time when nine years old, through El Paso, Texas, with a friend.   The two travelled by train to San Bernardino, California, seeking employment.   While looking for employment, social workers found Velazco-Barraza and placed him in an orphanage for seven months.   He was then transferred to a juvenile custody facility because of his illegal presence in the United States.   Velazco-Barraza remained in the juvenile facility for approximately five months, and was then sent to El Paso, where an aunt retrieved him and returned him to Delcias, where he stayed until he was eleven.   <u>See id.</u> ¶ 35, at 11.

Velazco-Barraza entered the United States again when he was eleven years old.   This time, he traveled by train to San Jose, California, where an aunt and uncle picked him up.   He stayed in San Jose until he was seventeen, and then relocated to Portland, Oregon, and Seattle, Washington, where he worked picking apples and pears.   He remained in these areas until the age of twenty-three, when he moved to Tampa, Florida where he was employed picking oranges.   He

stayed in Tampa until the age of twenty-six, when he returned to Delcias to build his mother a home.   He stayed in Delcias until he was twenty-eight.

Velazco-Barraza then returned to the United States and again traveled again to San Jose, where he stayed with an aunt and uncle until the age of twenty-nine.   Velazco-Barraza relocated to Portland.   In Portland, Velazco-Barraza was assaulted and suffered head injuries. Velazco-Barraza then returned to San Jose, where he stayed until the age of thirty-two.   He was subsequently deported.   Velazco-Barraza states that, from the age of thirty-two, he would travel back and forth between the United States and Mexico, and often was deported.   See id. ¶ 36, at 11-12.

Velazco-Barraza has never been married and has not fathered any children.   See id. ¶ 37, at 12.   He attended three years of formal education in Mexico.   He is fluent in Spanish, but has no fluency in English.   See id. ¶ 42, at 13.   Velazco-Barraza's employment in the United States includes picking apples, pears, and oranges, and landscaping and maintenance.   See PSR ¶ 43, at 14.   Velazco-Barraza worked in Mexico painting, maintenance, and landscaping fields.   See PSR ¶ 44, at 14.   He spent seven months in the Mexican Army at the age of seventeen, and was assigned a post, but was discharged because of a medical issue.   See id. ¶ 45, at 14. Velazco-Barraza reports no assets or liabilities, but he owns a home in Juarez which is valued at approximately $1,000.00.   He has no income.   See id. ¶ 46, at 14.

**2.     Velazco-Barraza's Mental Health History.**

Velazco-Barraza suffers from multiple head injuries resulting from when he was assaulted. He has not received treatment for these injuries outside of federal custody.   He states that in 1996 he committed arson to obtain medical care and treatment while in custody.   Velazco-Barraza has

received treatment for insomnia at the Torrance County Detention Center, in Estancia, New Mexico, where he was placed after his arrest.   Medical records from the Torrance County Detention Center indicate that Velazco-Barraza had a positive tuberculosis skin test, but an x-ray produced no evidence of active tuberculosis.   Velazco-Barraza has been proscribed Benztropine[1]and Haloperidol Decanoate[2] from the time he was taken into custody.   See id. ¶ 38, at 12.

An evaluation of Velazco-Barraza's mental competency revealed that he suffers from mental retardation, organic brain damage, and psychotic-level thinking.   The doctor evaluating Velazco-Barraza determined that his understanding of the facts of this case and the judicial process is at a rote level and easily disrupted.   The doctor also determined that Velazco-Barraza could not cooperate with his attorney with a reasonable degree of understanding because of his cognitive limitations, disorganized thinking, disruption in his orientation to time and space, and his failure to distinguish fantasy from reality.   See id. ¶ 39, at 12-13.   The Court subsequently ordered that Velazco-Barraza be committed to the Custody of the Attorney General for a psychological evaluation and treatment.   Velazco-Barraza was then transferred to the Federal Medical Center in Butner, North Carolina ("FMC Butner").   PSR ¶ 39, at 13.   While at FMC Butner,

---

[1] Benzotropine mesylate is a compound used in treating parkinsonism.   See Cogentin (Benzotropine Mesylate), in Physician's Desk Reference, 1957 (Lori Murray et al. eds)(57th ed. 2003).   Parkinsonism is another term for Parkinson's Disease, a "neurological syndrome . . . characterized by rhythmic muscular tremor, rigidity of movement, festination, droopy posture, and masklike facies."   Parkinsonism, in Stedman's Med. Dictionary, 1426 (Tiffany Piper, et al. eds.)(28th ed. 2006).

[2] "Haldol" or "Halodperidol" Decanoate is used for the treatment of schizophrenic patients who require prolonged parenteral antipsychotic therapy.   Haldol Decanoate, in Physician's Desk Reference, 2464.   "Parenteral" therapy refers to administering medicine by "intravenous, subcutaneous, intramuscular, or intramedullary injection."   Parenteral, in Stedman's Med. Dictionary, 1425.

Velazco-Barraza was diagnosed with: cognitive disorder not otherwise specified; alcohol dependence, by history; cannabis abuse, by history; psychotic disorder not otherwise specified, resolved; mild mental retardation; and self-reported head injuries.   Velazco-Barraza was prescribed certain psychotropic[3] medication at FMC Butner, including Haldol Decanoate (an antipsychotic), Haldol,[4] and Cogentin.[5] The staff psychologist at FMC Butner concluded, after a forensic evaluation, that, although Velazco-Barraza has a mental illness and mental defect, he is now competent to stand trial.   See id. ¶ 39, at 13.

Pursuant to Velazco-Barraza's counsel's instruction, the USPO did not question Velazco-Barraza regarding his use of drugs or alcohol.   A presentence investigative report that the USPO for the Western District of Texas prepared for Velazco-Barraza's 2005 offense of illegal reentry, indicates that Velazco-Barraza began consuming alcohol at the age of seven, and began consuming two marijuana cigarettes a day at the age of twenty-one, a habit which he maintained until the age of forty-three.   The W.D. Tex. presentence investigative report also indicates that Velazco-Barraza admitted using cocaine and heroin.   According to the W.D. Tex. presentence investigative report, Velazco-Barraza has attended several substance abuse treatment programs in Mexico.   See id. ¶ 41, at 13.

### 3.    Velazco-Barraza's Criminal History.

Velazco-Barraza has three adult criminal convictions.    See id. ¶ 21-23 at 6-8. Velazco-Barraza, on November 8, 1996, set fire to dry grass, resulting in thirty acres of county

---

[3] "Psychotropic" means "capable of affecting the mind, emotions, and behavior, denoting drugs used in the treatment of mental illness."   Psychotropic, in Stedman's Med. Dictionary, 1599.

[4] See supra n.2.

[5] "Cogentin" is the brand name for Benzotropine mesylate.   See Cogentin, in Physician's Desk Reference, 1957; supra n.1.

parkland being burned.   The fire originated approximately 200 yards from an equestrian center. Velazco-Barraza did not leave the scene of the crime, but remained to watch the fire and admitted that he started the fire to Los Angeles County Sheriff Department deputies when they arrived. Velazco-Barraza was originally found not mentally competent to stand trial, but his competence was restored for proceedings.   See id. ¶ 21, at 6-7.   On December 18, 1997, Velazco-Barraza pled no contest to the felony of arson of a structure or forest, in Los Angeles, California.   See PSR ¶ 21, at 6.   He was paroled on April 29, 1998, violated his parole on September 2, 1998, and was returned to custody.   See id. ¶ 21, at 6.   The USPO was unable to determine the nature of his parole violation.   See id. ¶ 21, at 7.   He was removed to Mexico on September 2, 1999, and his parole was discharged on February 23, 2002.

On May 9, 2009, USBP agents near the Ysleta Port of Entry, in El Paso, Texas, apprehended Velazco-Barraza and determined that Velazco-Barraza had entered the United States illegally.   On February 26, 2012, Velazco-Barraza pled guilty to the felony of illegally reentering the United States.   Velazco-Barraza was sentenced to 37-months imprisonment.   On August 11, 2004, he was released from custody, and on September 21, 2004, he was removed to Mexico.   See id. ¶ 22, at 7-8.

On May 9, 2007, USBP agents observed Velazco-Barraza enter the United States illegally by wading through the Rio Grande River near the Paso Del Norte Port of Entry, in El Paso. Velazco-Barraza was initially determined not competent to stand trial and was sent to FMC Butner.   Velazco-Barraza received treatment, which restored his competency.   On March 21, 2007, Velazco-Barraza pled guilty to the felony of illegal reentry.   Velazco-Barraza was sentenced to 57-months imprisonment.   He was released from custody on July 14, 2009, and

removed to Mexico on August 4, 2009.   See id. ¶ 23, at 8.

4.      **The Offense Conduct.**

Velazco-Barraza entered the United States again on November 1, 2009.   United States Border Patrol ("USBP") agents, responding to sensor activity, found Velazco-Barraza hiding in the brush on the United States' side of the United States-Mexico border.   See PSR ¶ 4, at 3. Velazco-Barraza admitted to the USBP agents that he was a national of Mexico, and has no immigration documentation which allows him to enter or remain in the United Sates.   The USBP agents arrested Velazco-Barraza.   See id. ¶ 4, at 3.   Velazco-Barraza later revealed that he had previously entered into the United States illegally.   The USBP agents conducted a record check and found that Velazco-Barraza was deported from the United States to Mexico on August 4, 2009, and the agents found that there was no evidence that Velazco-Barraza had applied for, or received permission to reenter the United States since his deportation.   See id. ¶ 5, at 3.

## PROCEDURAL BACKGROUND

On October 25, 2011, Velazco-Barraza pled guilty to the charge of Reentry of a Removed Alien, a violation of 8 U.S.C. §§ 1326(a) and (b), as charged in the Indictment, filed July 27, 2010 (Doc. 17).   See Non-Standard Fast Track Plea Agreement ¶ 3, at 2, filed Oct. 25, 2011 (Doc. 43)("Non-Standard Plea Agreement").   The parties preserved their rights to "assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a)." Non-Standard Plea Agreement ¶ 7, at 3.   The parties stipulated that: (i) Velazco-Barraza should receive a 2-level reduction for his acceptance of personal responsibility; (ii) the Plaintiff United

States of America would move for a reduction of 1 additional level in reduction to the base offense level, provided that Velazco-Barraza's base offense level was calculated to be at least 16; and (iii) Velazco-Barraza would waive all challenges to the reinstatement of his previous deportation/removal order.   <u>See</u> Non-Standard Plea Agreement ¶ 11(a)-(c), at 4-5. Velazco-Barraza waived his right to appeal any sentence within the guideline range.   See Non-Standard Plea Agreement ¶ 12, at 5.

The USPO calculates total offense level pursuant to rule 11(c)(1)(C) of the Federal Criminal Rules of Procedure to be 20.   <u>See</u> PSR ¶ 19, at 6.   Velazco-Barraza's base offense level is 8, pursuant to U.S.S.G. § 2L1.2.   <u>See</u> PSR ¶ 11, at 4.   Velazco-Barraza receives a 16-level increase to his base offense level, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), for the special offense characteristic that Velazco-Barraza was previously deported after having committed arson, which the USPO concludes is a crime of violence.   <u>See</u> PSR ¶ 12, at 4-5.   Velazco-Barraza's adjusted offense level is thus 24.   <u>See</u> PSR ¶ 16, at 6.   Velazco-Barraza receives a 3-level reduction for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.   <u>See</u> PSR ¶ 17, at 6.   The USPO provided a 1-level reduction, pursuant to the parties entering into a plea agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   <u>See</u> PSR ¶ 29, at 6.   The USPO thus calculates Velazco-Barraza's total offense level, pursuant to rule 11(c)(1)(C), as 20.   <u>See</u> PSR ¶ 19, at 6.

The USPO calculates Velazco-Barraza's total criminal history points to be 11, pursuant to U.S.S.G. § 5A, which establishes a criminal history category of V.   <u>See</u> PSR ¶ 25, at 9. Velazco-Barraza receives 3 criminal history points for each of his adult convictions.   <u>See</u> PSR ¶¶ 21, 22, 23, at 6-8.   He also receives 2 criminal history points because the federal offense of

illegally reentry for which the Court is sentencing him in this case was committed while he was on supervised released.  See PSR ¶ 24, at 9.  With an offense level of 20 and a criminal history category of V, Velazco-Barraza's guidelines sentencing range is 63 to 78 months, accounting, as the USPO did, for the parties having entered into a rule 11(c)(1)(C) plea agreement.  Without the reduction for the rule 11(c)(1)(C) plea agreement, Velazco-Barraza's criminal history category remains V, but his total offense level is 21, giving him a guidelines sentencing range is 70- to 87-months.  See PSR at 14.

The USPO determined that Velazco-Barraza's sentence may warrant a departure, pursuant to U.S.S.G. § 5H1.3, which allows a departure for a defendant's mental and emotional conditions, and pursuant to U.S.S.G. § 5K2.13, which allows a departure for a defendant's diminished capacity.  See PSR ¶ 49, at 15.  The USPO notes that Velazco-Barraza has previously been found incompetent to stand trial, and that his mental health problems are well documented.  The USPO states that it is "likely that these mental health issues contributed in some part to the defendant returning to the United States."  PSR ¶ 50, at 15-16.

Velazco-Barraza filed his sentencing memorandum on January 12, 2012.  See Sentencing Memo. at 1.  Velazco-Barraza requests the Court to impose a sentence of 37-months incarceration.  See Sentencing Memo. at 1.  Velazco-Barraza asserts that, despite "the treatment he has received, mental illness remains a significant and debilitating feature of his life."  Sentencing Memo. ¶ 1, at 1-2.  Velazco-Barraza asserts that he is "marginally competent."  Sentencing Memo. ¶ 1, at 2.  Velazco-Barraza asserts that the nature and circumstances of his offense warrant a downward variance, because his offense in this case is not a crime of violence and did not involve the use of a controlled substance.  Velazco-Barraza points out that his act of

entering the United States is criminal in nature only because he was previously deported. Velazco-Barraza also states that his offense was neither sophisticated nor well-planned, as he entered the United States because he was seeking work after he was kicked out of his mother's home.   See Sentencing Memo. ¶ 3, at 3.

Velazco-Barraza also asserts that his history and characteristics support a downward variance, pointing out that his "significant mental health issues" have plagued him his entire life. Sentencing Memo. ¶ 4, at 3.   Velazco-Barraza asserts that his mother physically abused him. See Sentencing Memo. ¶ 4, at 3.   He also points to his limited education -- he has had only three years of schooling -- as supporting a downward variance.   He asserts that his military career was cut short because he was "assaulted by his fellow soldiers and 'suffered a head injury.'" Sentencing Memo. ¶ 4, at 3-4 (quoting PSR ¶ 45, at 14).   Velazco-Barraza asserts that "it seems clear that Mr. Velazco-Barraza's low functioning and mental retardation frustrated those around him and led to physical abuse."   Sentencing Memo. ¶ 4, at 4.   Velazco-Barraza asserts that his physical abuse compounds the factors which support granting him a downward variance -- his "substance abuse issues, his itinerant life style, and his mental retardation."   Sentencing Memo. ¶ 4, at 4.   Velazco-Barraza asserts that his injuries, including his "significant, physical head injury" at the age of thirty-two, led "directly" to his "first significant contact with the criminal justice system."   Sentencing Memo. ¶ 5, at 4.   Velazco-Barraza asserts that he started the fire in 1996 so that "he could receive medical treatment for his head injuries."   Sentencing Memo. ¶ 5, at 4-5. Velazco-Barraza points out that he has been found competent to stand trial only with the assistance of psychotropic medication, and that he does not receive regular medical care or medication in Mexico.   See Sentencing Memo. ¶ 6, at 5.   #

- 10 -

Velazco-Barraza asserts that, under the totality of the circumstances, it "seems clear" that he is "significantly impaired and is likely to remain so for the rest of his life."   Sentencing Memo. ¶ 8, at 6.   Velazco-Barraza also asserts that his federal offense in this case and his previous illegal reentries into United States are similar in that he entered "without the assistance of a coyote or any sort of subterfuge."   Sentencing Memo. ¶ 6, at 5.   He asserts that, just as his mental competency evaluation in this case revealed that he suffers from "disorganized thinking, disruptions in orientation to time and space and failure to distinguish fantasy from reality," it "seems likely that this state of mind prevailed at the time of Mr. Velazco-Barraza's entry into the United States in November, 2009."   Sentencing Memo. ¶ 7, at 5.   Velazco-Barraza asserts that his level of culpability, as compared with others convicted of illegal reentry, seems significantly reduced by his "only . . . child-like understanding of the law and of his place in the world."   Sentencing Memo. ¶ 8, at 6.

Velazco-Barraza asserts that a sentence of 37-months imprisonment "would be sufficient but not greater than necessary to punish" him for his offense and would satisfy the sentencing goals of 18 U.S.C. § 3553(a).   Sentencing Memo. ¶ 9, at 6.   Velazco-Barraza asserts that this degree of a variance is warranted, because his conviction for criminal arson, which increased his offense level by 16, was "more of a cry for help," than a crime of violence, in that he "appears to have been motivated by a desire for treatment for his physical and mental problems."   Sentencing Memo. ¶ 10, at 6.                           #

The Court held a sentencing hearing on March 8, 2012.   See Sentencing Minute Sheet, filed Mar. 8, 2012 (Doc. 50).   The Court indicated that it is not certain it can accept the Non-Standard Plea Agreement, as it was not clear that the Non-Standard Plea Agreement was

valid in light of the United States Attorney General's changes to the Fast-Track program in 2012.[6]
See Sentencing Minute Sheet at 2.  When Velazco-Barraza came before the Court on March 8,
2012, for sentencing, the Court did not believe it could properly accept a plea agreement that did
not comply with the requirements of the current Fast-Track program in the district.  See
Transcript of Hearing, taken March 8, 2012 at 3:1-9 (noting that, because the Attorney General's
policy expired in February, 2012, and a new policy was put in place, "the new policy is going to
have to []state what we're doing with people who fall in Mr. Velazco-Barraza's situation of having
pled [but] the Court hasn't accepted the plea agreement[,] and then sentenced him.")("Mar. 8
Tr.");[7] The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today
Act, Pub. L. No. 108-21, § 401(m)(2)(B)(authorizing United States Attorneys to adopt Fast-Track
programs within their discretion).   The United States requested that Velazco-Barraza's
sentencing be continued in light of the Court's concern, and Velazco-Barraza did not object.  See
Sentencing Minute Sheet at 2.  The Court thus continued Velazco-Barraza's sentencing and

---

[6] On March 1, 2012, the United States Attorney General standardized the nation's
Fast-Track Program.  See Memorandum from James M. Cole, Deputy Attorney General, Re:
Department Policy on Early Disposition or "Fast-Track" Programs, dated Jan. 31, 2012,
www.justice.gov/dag/fast-track-program.pdf ("Fast Track Memo.").  A United States Attorney
could decide whether his or her District would have a Fast-Track program, but if the United States
Attorney opted to have one, it had to be the standard one that the United States Attorney General
approved for the entire nation's use.  See Fast-Track Memo. at 2.  Velazco-Barraza entered into
his Non-Standard Plea Agreement on October 25, 2011, under the United States Attorneys' old
Fast-Track program, which allowed for one-level downward departures basically for a waiver of
appeal.   The Honorable Lorenzo F. Garcia, United States Magistrate Judge accepted
Velasco-Barraza's plea of guilty, but specifically deferred, as is standard in this District, the
decision to accept the Non-Standard Plea Agreement to the Court at sentencing.  See Plea Minute
Sheet, filed Oct. 25, 2011 (Doc. 41).

[7] The Court's citations to the transcripts of the hearings refer to the court reporter's
original, unedited version.  Any final transcripts may contain slightly different page and/or line
numbers.

requested the United States to respond to the Court's concern regarding the Non-Standard Plea Agreement.   See Sentencing Minute Sheet at 2.

The parties entered into a new plea agreement on May 7, 2012.   See Plea Agreement at 1. The parties state that the Plea Agreement is "pursuant to Rule 11(c)(1)(C)" of the Federal Rules of Criminal Procedure.   Plea Agreement at 1.   The parties stipulate to an offense level of 20, which they state "takes into account a three level reduction for acceptance of responsibility plus one level reduction for an appeal waiver."   Plea Agreement ¶ 8(a), at 4.   The parties preserve their right to make arguments "with respect to the sentence to be imposed," including arguments regarding the applicability of "particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a)."   Plea Agreement ¶ 8(c), at 4.   Velazco-Barraza waives all rights to contest the reinstatement of his previous deportation/removal order.   See Plea Agreement ¶ 8(d), at 4.   Velazco-Barraza also waives a right to appeal his "sentence, including any fine, at or under the maximum statutory penalty authorized by law."   Plea Agreement ¶ 11, at 6.

The Court addressed these matters at the sentencing hearing on June 5, 2012.   See Transcript of Hearing, taken June 5, 2012 ("June 5 Tr.").   Velazco-Barraza confirmed that he had reviewed the PSR and that he does dispute any issues therein.   See June 5 Tr. at 2:19-3:3 (Court, McCue, and Defendant).   The Court noted that the Plea Agreement contains a 1-level downward departure, making his offense level 20.   See June 5 Tr. at 3:4-17 (Court, McCue).   The United States stated that in the Plea Agreement, the parties were "attempting to avoid any sort of procedural complications" and thus entered into a rule 11(c)(1)(C) of the Rules of Federal Criminal Procedure agreement, and that the Plea Agreement specifies Velazco-Barraza's offense

- 13 -

level to be 20.   See June 5 Tr. at 3:21-4:1 (Torrez).   The Court confirmed with the United States

that there was no motion for downward departure and that the only departures in the PSR were for

the parties having entered into a rule 11(c)(1)(C) agreement.   See June 5 Tr. at 4:2-5 (Court,

Torrez).   The United States moved for a 3 level reduction for Velazco-Barraza's acceptance of

responsibility, to which Velazco-Barraza did not object.   See June 5 Tr. at 4:6-17 (Court, Torrez,

McCue).

        The Court then inquired of the parties what the justification is for the variance in the Plea

Agreement to a guidelines range of 60 to 78 months.   See June 5 Tr. at 5:19-22 (Court).

Velazco-Barraza noted that the Plea Agreement provides the Court with the "latitude to impose a

sentence that it deems . . . appropriate," but that the offense level of 20 is in line with other

immigration cases in this district, and also accounts for his "somewhat unique mental health

history."   June 5 Tr. at 5:11-20 (McCue).   The Court stated that the parties cannot agree to "just

any offense level they want" and that, under rule 11(c)(1)(C), the parties must agree to a "specific

sentence," to a "specific range" for a sentence, or that a "particular provision of the sentencing

guidelines or policy statement or sentencing factor does not apply."[8]   June 5 Tr. at 5:21-22

---

        [8] Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure states that,

An attorney for the government and the defendant's attorney, or the defendant
when proceeding pro se, may discuss and reach a plea agreement . . . . If the
defendant pleads guilty or nolo contendere to either a charged offense or a lesser
related offense, the plea agreement may specify that an attorney for the government
will:

        (C) agree that a specific sentence or sentencing range is the appropriate
        disposition of the case, or that a particular provision of the Sentencing
        Guidelines, or police statement, or sentencing factor does or does not
        apply (such recommendation or request binds the court once the court
        accepts the plea agreement).

(Court); id. at 6:11-13 (Court); id. at 6:16-20 (Court).   The Court stated that the parties had not agreed to any of those in the Plea Agreement, and thus the Court did not see how the Plea Agreement is a rule 11(c)(1)(C) agreement.   See June 5 Tr. at 6:17-24 (Court).   The United States stated that their "intention was to agree to a specific range that would be[] associated with a level 20," but the Court pointed out that the parties had not agreed to a specific range, because Velazco-Barraza has a pending motion for a downward variance, which indicates that the parties have not agreed on the appropriate disposition of the case.   June 5 Tr. at 7:1-7 (Torrez, Court).

The Court stated that it is not comfortable simply granting a downward departure for a defendant's waiver of the appeal, as the parties seem to be doing here.   See June 5 Tr. at 7:14-17 (Court).   The Court then stated that it is inclined to reject the Plea Agreement, as it is not a rule 11(c)(1)(C) agreement.   See June 5 Tr. at 7:22-25 (Court).   Velazco-Barraza stated that the parties had agreed to an appropriate disposition of the case, because the parties had determined that the appropriate guidelines range for an offense level of 20 would be appropriate.   See June 5 Tr. at 8:11-14 (McCue).   The Court did not accept Velazco-Barraza's assertion that the parties are in agreement, and stated that the parties are "not in agreement so I reject it."   June 5 Tr. at 8:15-16 (Court).

The Court then inquired how Velazco-Barraza would like to proceed, either in persisting in his plea, or proceeding to trial.   See June 5 Tr. at 8:18-21 (Court).   Velazco-Barraza stated that he would like to persist in his plea and, if possible, proceed to a disposition of his sentencing at the hearing.   See June 5 Tr. at 8:25-9:2 (McCue).

---

Fed. R. Crim. P. 11(c)(1)(C).

If Velazco-Barraza persisted in his plea, his offense level would be 21, and his criminal history category V, making his guidelines sentencing range 70 to 87 months. <u>See</u> June 5 Tr. at 9:6-14 (Court).  The Court inquired whether Velazco-Barraza desired to persist in his guilty plea in light of his guideline range and criminal history category without the benefit of any plea agreement, and Velazco-Barraza stated that he does.  <u>See</u> June 5 Tr. at 9:14-17 (Court, Defendant).

Velazco-Barraza then argued in support of his motion for a variance.  <u>See</u> June 5 Tr. at 9:18-22 (Court, McCue).  Velazco-Barraza stated that his most important characteristic effecting his sentence is his history of mental problems.  <u>See</u> June 5 Tr. at 10:8-11 (McCue). Velazco-Barraza stated that his mental history has "affected him his entire life," and "affects his criminal history, and [is] something that affects the facts of this case."  June 5 Tr. at 10:12-14 (McCue).  Velazco-Barraza stated that he did not come to the United States as part of a "sophisticated operation," but rather "just walked across the border," and was "apprehended within yards of his entry."  June 5 Tr. at 10:15-18 (McCue).  Velazco-Barraza pointed out that he has had mental health issues his entire life, and although he has been found competent every time he has been in the criminal system, he is "only competent by virtue of the fact that he gets monthly shots [of] Haldol and takes daily medication."  June 5 Tr. at 10:18-22 (McCue). Velazco-Barraza asserted that, in light of his criminal history and offense level, a sentence of 37-months would be "sufficient but not greater than necessary to satisfy the sentencing goals." June 5 Tr. at 10:23-11:6 (McCue.)

Velazco-Barraza then spoke on his own behalf.  He stated that, if the Court gives him time in jail "I will come back to this country, but if you release me, then I will not come back again.  If

you give me a chance and then probation, I will not return again, but if you give me time in the can, I will come back." June 5 Tr. at 11:12-17 (Velazco-Barraza). Velazco-Barraza's counsel, Federal Public Defender Stephen McCue, then stated that Velazco-Barraza is "making my point for me," in that his remarks to the Court demonstrate that he does not "get it." June 5 Tr. at 11:18-20 (McCue). McCue asserted that Velazco-Barraza is "on his own planet." June 5 Tr. at 11:20-21 (McCue). The Court inquired of Velazco-Barraza whether he accepts responsibility for returning to the United States illegally, and he stated that he does. See June 5 Tr. at 11:24-12:2 (Court, Defendant).

The Court inquired of the United States what its position is on a downward variance for Velazco-Barraza in light of his mental health issues, noting that the USPO recommends a downward departure based upon his mental condition. See June 5 Tr. at 12:5-13 (Court). The United States stated that a downward departure would be appropriate in this case. See June 5 Tr. at 12:14-20 (Torrez). The United States stated that Velazco-Barraza's requested sentence of 37-months strikes it as "a little low," while a sentence of 63-months would likely be longer that needed under the circumstances. June 5 Tr. at 13:1-5 (Torrez).

The Court noted Velazco-Barraza had previously received a sentence of 37 months, and a subsequent sentence of 57-months, and thus the Court was concerned with sentencing him to less time than he has served in the past. See June 5 Tr. at 13:6-14 (Court). Velazco-Barraza asserted that serving time would have no impact on him, and that the only way he is able to function is through "going to the hospital and taking amounts of medication that would put the rest of us on the floor." June 5 Tr. at 13:15-22 (McCue). Velazco-Barraza asserted that the Court would not "accomplish anything in terms of deterrence or protection of the public" by incarcerating him.

June 5 Tr. at 13:22-25 (McCue).    Regarding Velazco-Barraza's criminal history, Velazco-Barraza asserted that his arson conviction in 1996 was "more a cry for help than a crime of violence," because he only "lit a fire because he wasn't getting any mental health treatment," and then waited for police to arrive " so he could get some mental health treatment."   June 5 Tr. at 14:3-15 (McCue).   Velazco-Barraza, thus, asserted that a guidelines sentence would substantially overrepresent his criminal history because of his mental health history.   See June 5 Tr. at 14:16-19 (McCue).

The United States stated that it is not interested in pursuing a fine, even though Velazco-Barraza has some assets.   See June 5 Tr. at 14:20-22 (Court, Torrez).

## LAW REGARDING DOWNWARD DEPARTURES

The guidelines "place essentially no limit on the number of potential factors that may warrant a departure."   Koon v. United States, 518 U.S. 81, 106, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). See United States v. Coleman, 188 F.3d 354, 358 (6th Cir.1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").   A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline."   Koon v. United States, 518 U.S. at 92.   Accord United States v. Lewellen, No. 11–1524, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the

congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

## LAW REGARDING DOWNWARD DEPARTURES FOR A DEFENDANT'S MENTAL CONDITION AND DIMINISHED CAPACITY

Chapter Five, part H, subpart 1, section 3, of the United States Sentencing Guidelines provides that:

Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. See also Chapter Five, Part K, Subpart 2 (Other Grounds for Departure).

U.S.S.G. § 5H1.3.   Chapter Five, part K, subpart 2, section 13 of the United States Sentencing Guidelines provides that:

A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.   Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13.   Application note 1 to U.S.S.G. § 5K2.13 provides that, for purposes of this policy statement, "'significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior

comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."   U.S.S.G. § 5K2.13 cmt n.1.   Diminished capacity is an "encouraged" factor -- a specific factor that the Commission provided "to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines."   United States v. Neal, 249 F.3d 1251, 1256 (10th Cir. 2001)(citing U.S.S.G. § 5K2.0).   In the case of an encouraged factor, "the court is authorized to depart if the applicable Guideline does not already take it into account."   United States v. Neal, 249 F.3d at 1256.   Accord United States v. Trejo-Lara, No. 07-1456, 2008 WL 2397672, at *2 (D.N.M. Jan. 30, 2008)(Browning, J.).

<u>**ANALYSIS**</u>

The Court carefully considered the PSR's factual findings and, because there are not any objections thereto, the Court adopts those findings as its own.   The Court also considered the sentencing guidelines applications in the PSR.   Because neither party objects, the Court adopts those applications as its own, with the exception of the reduction for the rule 11(c)(1)(C) agreement.

**I.** **THE COURT REJECTS THE PLEA AGREEMENT.**

The Court concludes that the Plea Agreement does not satisfy the requirements of rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   The parties have stipulated to an offense level of 20, but the parties have not stipulated to a "specific sentence or sentencing range" that is the appropriate disposition of the case, and the parties have not stipulated that a "particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply."   Fed. R. Crim. P. 11(c)(1)(C).   Moreover, the parties' disagreement as to an appropriate

disposition of this case is evidenced by Velazco-Barraza having filed a motion for a downward variance.  See United States v. Darton, 595 F.3d 1191, 1192 (10th Cir. 2010)(finding that a plea agreement was not a binding one, pursuant to rule 11(c)(1)(C), even though the plea agreement purported to be "pursuant to Fed. R. Crim. P. 11(c)(1)(C)," because the parties had not agreed to a specific sentence, sentencing range, or that a particular provision of the Sentencing Guidelines did or did not apply).  The Court thus concludes that the parties have not complied with the requirements of rule 11(c)(1)(C) and the Court accordingly rejects the Plea Agreement.

## II.    THE COURT WILL GRANT VELAZCO-BARRAZA A 4-LEVEL DOWNWARD DEPARTURE.

Velazco-Barraza's offense level is 21 and his criminal history category is V, giving him a guideline sentencing range of 70 to 87 months.  The Court will grant a downward departure, pursuant to U.S.S.G. §§ 5H1.3 and 5K2.13.   The Court finds that Velazco-Barraza suffers from significant mental health disorders; in the past he has been diagnosed with alcohol dependence by history, cannabis dependence by history, psychotic disorder not otherwise specified, mild mental retardation, and self-reported headaches.   Velazco-Barraza previously suffered from disorientated thoughts, impulsive behavior, and significant neurocognitive deficits. Velazco-Barraza was previously found incompetent to stand trial, but his competency was restored with the aid of medication.

While the Court unfortunately sees many defendants with mental problems, Velazco-Barraza's appear to be out of the heartland of cases that this Court, the District of New Mexico, and federal cases in general see.   While competent, his mental problems are severe.   His mental health issues contributed to his arson offense in 1996, the crime of violence which has raised his offense level to its current high level.   See PSR ¶ 50, at 15-16 (noting that it "is likely

- 21 -

these mental health issues contributed in some part to the defendant returning to the United States," and thus recommending a downward departure for Velazco-Barraza pursuant to U.S.S.G. §§ 5H1.3 and 5K2.13).   Additionally, the Court has some concerns that Velazco-Barraza's conviction in 1996 was somewhat of a cry for help.   The Court believes that enhancement needs to be mitigated.   Based on these findings the Court concludes that Velazco-Barraza's total adjusted offense level should be reduced by four levels, so that he receives a 12-level enhancement for his previous felonies rather than a 16-level enhancement.   The Court believes that four levels is an appropriate reduction.

### III.   THE COURT WILL NOT VARY FROM THE APPLICABLE GUIDELINES SENTENCING RANGE.

With an offense level of 17 and a criminal history category of V, Velazco-Barraza's guidelines imprisonment range is 46 to 57 months.   The Court notes that Velazco-Barraza illegally reentered the United States following a deportation, which was subsequent to Velazco-Barraza committing a felony crime of violence.   The Court has considered the guidelines, but in arriving at its sentence has considered not only the guidelines, but other sentencing goals as well.   Specifically, the Court considered the guidelines sentencing range established for the applicable category of offense committed by the applicable category of defendant, and the Court believes that the punishment that is set forth in the resulting guidelines is appropriate for this sort of offense.   The Court then considered the kinds of sentences and range established by the guidelines, and the Court believes that a sentence at the low end of the guidelines range is appropriate here.   The Court believes that a sentence of 46-months reflects the seriousness of the offense and promotes respect for the law.   The Court also believes that this sentence provides a more just punishment.

- 22 -

While the Court concludes that a downward departure for his mental problems is appropriate, the Court is not convinced that a variance from the applicable guidelines range, further than the downward departure, is appropriate.   Accordingly, the Court believes that a guidelines sentence is appropriate for this particular individual.   The Court is very concerned about affording adequate deterrence here, particularly given the statements that Velazco-Barraza made, and that the sentence of 57 months did not deter Velazco-Barraza form returning to the United States.   The Court thus agrees with the United States that a sentence above 37 months is appropriate.   While 57 months seems high to the Court, given Velazco-Barraza's mental health struggles, the Court is concerned that reducing Velazco-Barraza sentence to 37 months sends the wrong signal to him, given what he did after his 2005 conviction.   The Court does not believe that Velazco-Barraza is a great threat to the public, although the arson offense in 1996 shows that he poses some threat, the Court thus does not believe that it needs to emphasize protecting the public, as his main problem now seems to be returning to the United States.   The Court is concerned about sentencing disparities here, and while the Court believes that Velazco-Barraza's mental health conditions keep any disparity from being an unwarranted sentencing disparity, a variance would create a greater disparity.   The Court also notes that it is not reducing his sentence to the same as that which he first received for illegal reentry, which the Court believes avoids an unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct.

Thus, after carefully thinking for some time about Velazco-Barraza's sentence, the Court believes that this sentence fully and effectively reflects each of the factors embodies in 18 U.S.C. § 3553(a).   Undoubtedly, with the downward departure, the guidelines provide a sentence that

reflects the factors in 18 U.S.C. § 3553(a), particularly the need for special and general deterrence, which seems to be most important factor here.   While the Court's task is not to fashion a reasonable sentence, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.   Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)), the Court does believe that this sentence is, with the downward departure, a reasonable sentence.   The Court also believes that a sentence at the low end of the guidelines is appropriate here, and the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).   The Court thus commits Defendant Jose Velazco-Barraza to the Bureau of Prisons' custody for a term of 46-months.   The Court will not impose a term of supervised release.

**IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum and Request for Downward Departure, filed Jan. 12, 2012 (Doc. 46), are granted in part and denied in part.   The Court grants Defendant Jose Velazco-Barraza a downward departure, but not a variance.   The Court sentences Velazco-Barraza to 46-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzalez
United States Attorney
Mary Catherine McCulloch
Raul Torrez
Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Stephen P. McCue
Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*